And we will hear next, Polar Equipment v. ExxonMobil. Before my time has started, Your Honors, if I could just mention, I'm on behalf of Seahawk. Would you identify yourself, please? Yes, I'm Michael Shine. Thank you. Shine. On behalf of Seahawk. And I spoke with Mr. Dahm ahead of time. We each are appellants in some capacity here. And we discussed that in terms of any reserved time, Exxon, if it has a rebuttal time, will go first. And then Seahawk, if it has rebuttal time, will go afterwards, if that's acceptable. That's fine, Counsel. Thank you. You may proceed. Thank you, Your Honors. Michael Shine on behalf of Seahawk Seafood. I'd like to try to reserve three minutes if I could. This case is back before you because Exxon is trying to wiggle out of the plain language of its settlement agreement. Where is that plain language? Well, it's in the record at ER 41 in the words chosen by Exxon's own very capable attorneys from O'Melveny & Myers, where Chuck Diamond summarized the settlement between the parties as follows, quote, the parties agreed to settle this matter for a total of $2.1 million representing damages for 1992 and 1993, with interest accruing from July 1 of each year through the date of payment. The parties also agreed that prejudgment interest will be compounded annually. Well, Counsel, isn't the context of that recital the assumption early on in the proceedings that this was going to be a federal claim, not a state claim? No, Your Honor, and I'm very glad. That's the crux of it. We need to talk about that. Isn't that the heart of the matter here? Yes, absolutely. And if you look at ER 41, the trial court construed Paragraph 2 in light of Paragraph 1. Paragraph 1 says, I write to seek your agreement respecting the computation of interest pursuant to Judge Holland's order of last week, and that order awarded interest based on federal law. However, it is very clear when you look at that letter that Paragraph 2 is a completely independent summary of the settlement between the parties, and it is Paragraph 3 that then relates back to Paragraph 1 because that sets forth the computation of interest that is mentioned in Paragraph 1. The interest is 4.11 or 3.54, and those are in no way state interest calculations. Correct. But before Exxon's attorney, Diamond, gets to that, he takes the time to reiterate the settlement before the parties. The parties agreed to settle this matter for a total, what I just read. He reiterates all the terms of the settlement in detail and says the parties also agreed that prejudgment interest will be compounded annually. That was the agreement. Excuse me, Judge Feinberg. I'm sorry. In Paragraph 3, then, Mr. Diamond goes on to tell you what the total amount owing Seahawk is. That's correct. And that would be calculated at the rate of 4.11 for 1992, the 3 percent for 1993 compounded. Yes, Your Honor. So, I mean, if you've agreed that this is the settlement agreement, this is binding, why isn't that figure also binding? Because the settlement agreement is general, and that's in Paragraph 2. It doesn't specify Federal law or State law. At the time of the settlement agreement, original agreement, the Putnam letter in December of 2004, it could be awarded based on State law or Federal law. At the time of this letter, that was still in play. Everybody was well aware Seahawk was appealing. The case was not over. Was the appeal already been filed at that point? No, Your Honor, but it was agreed in the original Putnam letter that the parties could appeal. But as of the time of the Diamond letter, it doesn't indicate that the matter actually had been appealed. That's correct. But there was really no question about this. Now, the point I'm making is that the second paragraph, which recites a settlement agreement, those are general terms. Compound interest will be or prejudgment interest will be compounded annually. That is not tied to the application of State law or Federal law. That's simply the agreement. Later on, the Court's rulings have various effects on that agreement. But the agreement is never limited. The objective manifestation of intent by Exxon never limits the agreement. Under Federal law, interest would be compounded whether the parties said so or not. If the parties were silent under Federal law, interest would be compounded, correct? The Court has discretion on that, but generally it is, yes. So doesn't it make even more sense to construe that paragraph as not being limited to Federal law? Because if there were no sentence in there about compounding and everybody assumed that only Federal law applied, then logically you wouldn't need to have that unless State law could possibly apply. And that was still an issue between the parties. That was still an issue between the parties. That's correct, Your Honor. You know, Mr. Diamond's statement of the terms of the settlement agreement was no offhand statement. It was part of a letter agreement tendered to Seahawk for signature and signed by Seahawk's corporate counsel, Mr. Young. It does not say compounded annually unless State law sets the rate. The District Court rewrote the agreement of the parties to say just this, thereby adding an exception that was nowhere stated by Exxon or agreed to by the parties. Alaska law favors the settlement of disputes and therefore applies a special rule to settlement agreements. Quote, broad language in settlement agreement implies that all claims are settled. The parties must specifically state claims that are not settled. That's the Abood case cited in our brief. As applied to the Diamond letter, this means, for example, that if Seahawk had not intended to settle its claim for damages for 1990 to 91, it needed to say so expressly. It didn't, and therefore those years were settled without any compensation to Seahawk. But what's good for the goose is good for the gander. At the same time, if similarly, if Exxon did not intend to settle Seahawk's claim for compound prejudgment interest at the rate set according to State law, it needed to say so expressly. It did not, and the claim was settled. Now, this is not an insignificant rule of technicality. In a case where interest had been running for 16 years, it's worth millions of dollars. So if Exxon wanted to carve something out of its obligation to, quote, pay compound interest, it was obligated to say so. Any other result means that we don't get the agreement we bargained for. It means Seahawk gave up its 90 to 91 damages and about $4 million off its expert's estimate of what its damages were in 92 to 93 for less than it was promised. Counsel, you're down to about two minutes if you wish to reserve. Your Honor, I'm going to reserve the time. Thank you. You may do so. I believe we will hear next from Mr. Weigelt. Is that correct? Mr. Dahm would be next. Oh, that's correct. That is correct. Yes. No, that is correct. No, I excuse my misunderstanding. It's correct that we will hear from Exxon. Mr. Dahm? Thank you, Your Honor. May it please the Court. John Dahm for ExxonMobil Corporation. We think on both these cases that the interpretation of a written agreement under Alaska law requires the Court to consider extrinsic evidence. In the Seahawk case, the Court considered the extrinsic evidence and found for Exxon. That finding is reviewed for clear error and should be affirmed. In the Cook Inlet case, the Court refused to consider the extrinsic evidence in the mistaken belief that extrinsic evidence was not admissible when a contract was integrated. That was an error of law. It's reviewed de novo, and we think it requires reversal. Let me begin with Seahawk. They argued for the first time in their reply brief that de novo review, not the clearly erroneous standard, applies because this is a motion, was a motion, and not a trot. They concede that the fact that all the evidence before the district court was documentary does not take it out of the clearly erroneous standard. They say, of course, that's right, and the Supreme Court's decision in Anderson v. City of Vestmer makes it clear that they're right on that point. But their position about the difference between a motion and a trial is completely wrong. It was in the reply brief. But this Court often reviews motions. The most typical form of review of a motion is that the standard is whether the district court reviews this discretion, errors of law are reviewed de novo, findings of fact are reviewed for clear error. That's the situation here. There was disputed evidence below. It was documentary. Judge Holland reviewed it all. He resolved the disputed issues, and that finding we submit is reviewed for clear error and requires affirmance. Well, regardless of the standard of review, my difficulty is in reading any limitation into the diamond letters second paragraph. It's clear, you know, you and I had a conversation about this case previously. And the entire issue that was preserved for this Court's previous consideration was whether State law applied or Federal law applied. And secondarily, if it was Federal law, whether a proper rate had been selected under Federal law. So the State versus Federal issue was known to the parties and alive and well at the time of the settlement. And yet the statement that opposing counsel read, as you know, simply says pre-judgment interest will be compounded. It doesn't say if but only if Federal law, which presumes that it applies, you know, it wasn't limited. So under any standard of review, I think I'm a little bit confused as to how the district court came to the conclusion or could properly come to the conclusion it did. Your Honor, I think I have to go back to the premise from which Your Honor started, which is that there had to be a limitation on State law. The actual issue here is, was there an affirmative agreement between the parties sufficient to take this case out of the general rule of Alaska law that interest is simple? Right. And the question is, what is the meaning of the sentence? The parties also agree that pre-judgment interest will be compounded annually. That's the entire sentence. Yes. And the first question is, what was the parties' settlement agreement? And that was embodied in the agreement of December 1. And that said absolutely nothing about compound interest. That's the Putnam? That's the Putnam letter, yes. The Putnam letter. That said absolutely nothing about compound interest. Seahawk agreed. No, it still said that so far that the parties had not agreed on interest. Right. And so that came later. So there has to be a point at which an agreement was reached between the parties that interest would be compounded. Right. And Seahawk's position is that without any discussions, the sentence in the Diamond letter was Exxon's agreement, without any consideration, without anything coming in, to pay, as Mr. Shine says, millions of dollars in additional compensation. Now, if you just test that argument on a plausibility basis, it's not very plausible. So that's one basis for what the district court did. The other thing is the meaning of English words. The sentence says, Exxon. I mean, if I say Exxon agrees that interest should be compounded, that sentence as a matter of English usage can mean two things. It can mean Exxon promises to pay compound interest, or it can mean Exxon acknowledges, Exxon recognizes, that under this legal situation, interest will be compounded. And that's all Mr. Diamond was saying there. He was interpreting Judge Holland's order that interest would be federal. We knew it was going to be appealed. Your Honor is quite right about that. But what he was saying was, in this legal situation, under Judge Holland's order, we agree, we have agreed, that since he picked federal law, federal law generally requires compounding, and we're not going to try to march through the tiny little loophole that exists under 28 U.S.C. 1761. That's what the letter meant. And it was said in order to make the computation possible. We don't think that so. That's really all I have to say about Siegel. There was disputed evidence. The judge resolved it. And unless the Court has questions, I'll move on to the other case. And that case presents a completely different problem. Because in Cook Inlet, Judge Holland did not review the extrinsic evidence. He did not make a determination about disputed evidence. He made a ruling of law that because the contract contained an integration clause, he wasn't entitled to consider the extrinsic evidence. And he made that ruling very clear. He did it four times. First, in Order 370, he simply didn't consider the evidence. Under what circumstances does Alaska permit the consultation of extrinsic evidence? On issues of the meaning of the contract, issues of interpretation. Okay. And on reformation, which is also important in this case. Okay. So are you arguing for reformation, or are you arguing that you have ambiguous terms that need to be interpreted? We are arguing that the terms are ambiguous and needed to be interpreted. Which term is ambiguous? I don't read Alaska law. I looked at those cases again this morning, and I don't see that Alaska law just allows in general extrinsic evidence to be introduced to change the meaning of the contract. It does look like if there are terms that are ambiguous, that extrinsic evidence may be used as an aid to understanding the contract. So what terms are ambiguous? Well, Your Honor, that's not quite right. Alaska law does not require that a contract be ambiguous for extrinsic evidence to be admissible. That's not what I said. I said that there are terms that are ambiguous. Alaska law doesn't require that either. Okay. But it doesn't allow the extrinsic evidence that is admitted is admitted for the purposes of interpreting contractual terms. Yes. Okay. What term needs to be interpreted here? The question here is whether the form of judgment which was attached to the contract All right. I'm looking at that now. was intended to create an agreement that is not stated in the body of the contract. That just seems to me to be way outside of what Alaska permits extrinsic evidence to be used for. That doesn't seem to comport with what Alaska said extrinsic evidence could be used for. You have a form of judgment here which is about as plain as it can be. It tells the district judge, we've already put your name on the bottom here. All you have to do is sign it, and all you have to do is fill in an interest rate, and we're going to compound the interest rate. Now, what extrinsic evidence could you possibly introduce that would help us understand that contract? Well, I think the – I think the extrinsic evidence we would introduce that would help the Court, would have helped Judge Holland understand the contract, was that the parties did not intend that that judgment, which was, after all, just an attachment, we couldn't control the fact that it was just an attachment that was made a part of the contract. Counsel, the diminutive doesn't help here. Well, in any event, Your Honor, even if you're right that that contract is unambiguous on its face and has that meaning, that's precisely the situation that under the law of Alaska and every other State, you seek reformation. The reformation action says, okay, this is what the written contract says, but it doesn't mean that. I understand there is a reformation case. What's the status of it now? It was removed by the defendants to Federal court, and Judge Holland entered an order dismissing it on grounds of res judicata. His position was that what we took to be a – we think was a procedural ruling in this case denying leave to amend to set up that reformation case operated as a judgment and prevented us from asserting reformation in any court anywhere. Is there a notice of appeal pending? Yes, there is. We will see that case presumably in due course. Yes, you will see that case in due course. But we, as our briefs indicate, we think the fundamental error here was not putting the extrinsic evidence in in this case, either on the question of interpretation or on the question of reformation of this contract. So do we have the question of reformation before us, counsel? Yes, you do, Your Honor. Your Honor, we – the sequence was that pursuant to the original settlement agreement, the parties filed motions with – let me see if I can get this. I'm sorry. I have – yes. There's a motion for leave to amend. The parties filed motions. That was denied. Yes. And so that was presumably the reason for the separate action. Yes. So we have before us a question whether there was an abuse of discretion in denying leave to amend to add the reformation claim. That's right. And the circumstances of that were that in the briefing on what the interest rate should be, Cook Inlet, represented by Mr. Widener, who was the sole negotiator of this contract, repeatedly took the position that this – that if State law governed, the interest would be simple only. He once suggested that we'd misstated something he said when he took us as making a suggestion that he was seeking compound interest. He said he was not. He was the only negotiator. They're separately represented now. Mr. Widener was the only negotiator of this deal. Then on June 15, as a result of this Court's decision in the Seahawk case, Judge Holland asked for new briefs, limited, I thought, to the question of what the implication of Seahawk was. Exxon says Seahawk obviously governs and State law has to govern interest. Cook Inlet and Nautilus said, yes, that's right, but also under the contract itself, the interest has to be compounded. That was a brand-new position on June 15, 2007. Simultaneous briefs. We had no right to say anything to that. I was in China. We cobbled together something on the meaning of the contract, and within a month after CIP saying we have a new interpretation of this contract, we filed an amended answer with counterclaim for reformation. Now, we acted within a month. They keep saying it's too late. Judge Holland said it was too late. Nobody's cited a case that says it's too late. Nobody's put up any showing of any prejudice. I don't know of any requirement under the Federal rules that makes it wrong to react within a month to an issue you didn't know was in the case and that you had no notice of prior to that time. Nevertheless, the amendment was denied, and the combination of the denial of that amendment with Judge Holland's interpretation of the race judicata rules is that what we think is a perfectly good claim for reformation is not allowed to be presented anywhere. Now, I wouldn't say to you that our case for reformation is a slam dunk. It's — it's — it will turn on issues of fact that could be disputed. We're not asking you to send the — send that issue back to Judge Holland with an instruction that Exxon wins. All we want from this Court is an opportunity to prove our case before some trier of fact somewhere and have it resolved. I'll reserve the remainder of my time. You may do so, Counsel. Now we will hear from Nautilus Poehler, and I assume Cook Inlet. Good morning, Your Honors. For the record, my name is Ed Weigeld. I represent Nautilus Marine Enterprise. I'd like to reserve four minutes for Mr. Widener, who will speak on behalf of CIP. All right. First off, I'd like to thank the Court for the privilege of being here this morning. It's a beautiful courthouse. With all due respect to Mr. Dahm, Mr. Dahm takes liberty with some of the facts and the issues in this case. The ultimate issue in this case is the interpretation of a written settlement contract. This contract has a full integration clause, a merger clause, a thou shall not appeal any other issue than the reserved issue, which is the rate of interest, and a nonrepresentation clause saying each counsel who signed it, Mr. Dahm, myself, Mr. Widener, Mr. Smith, who I see in this courtroom, and I can't remember the last counsel, each represented that this document was the full, complete settlement between the parties and this document was the settlement agreement itself and the attached, fully incorporated, stipulated judgment. The form of that judgment, as your Honor noted, was very simple. It was very simple for a reason, to limit any argument and to eliminate any open terms. But that judgment said that the seafood processor, which is a reference to Nautilus Marine and CIP, were entitled to interest at the rate of blank percent, comma, compounded annually from July 1, 1992. That phrase is repeated for 1993. Those words were not arbitrarily chosen. In fact, they were written in the original document. You can trace those back to them from Mr. Dahm. Mr. Dahm wrote those words. He highlighted those words. He agreed to the terms of the contract. And on that basis, I, as one of the counsels, signed settlement based on the written terms of the contract. There is nothing ambiguous about the terms of that contract. It says what it says. It clearly specifies that Nautilus Marine and CIP are entitled to interest, which is compounded annually. It is not ambiguous. Judge Holland made very, very specific findings that it's not ambiguous. The language is plain as day. It has ordinary meanings, technical meanings. It means we get interest, which is compounded annually, a very specific method which was agreed upon by the parties. To generate an issue, Exxon has tried to say that there was a failure of Judge Holland's consideration of evidence. And he points to three things, his declaration, which was submitted after the time of decision, the conduct of CIP because they had a reference in one of their briefs regarding Alaska law in the prejudgment interest rate, and references to preliminary negotiations, which was again submitted to Judge Holland after the time of his decision as embodied in Order 370. What happened in this case, contrary to what Mr. Dahm said, is that the issue of compounding of interest was set forth before the Court very early on. In fact, Judge Holland made a finding in Order 370 at ER 42 where he indicates that this issue was first raised in the pleadings filed by Nautilus Marine back in February of 07. It was also embodied in Mr. Waterer's declaration where he comments after the terms of the party settlement that there was a compounding interest of interest and that it was being compounded annually. The focus of Mr. Waterer's declaration was to explain why under either State law or Federal law we would be entitled to compounding of interest because the compounding of interest is allowable, at least our position was at the time, under the Alaska Act as an available remedy to a judge sitting in Maritime. He could pick the Federal law or he could take standards under State law, which also encompassed providing full remedies in the compounding of interest. It was a nonissue. Six months, eight months later, in June 15th, Exxon for the first time files a supplemental response saying that they want to change the term for the settlement. They're now saying that it's simple interest. Well, that simply isn't what the agreement said. It said it was compounded. After that, they filed a second supplemental response in June 26, 2007. In that response, they characterized the issue before the Court as being interpretation of the contract, the contract being the settlement agreement as well as the attached and fully incorporated stipulated judgment. That was the issue. They also said in their memorandum to Judge Holland that there was no need to resort to extrinsic evidence, but we could look at the document and figure all of this out. We then proceed to oral arguments on July 9th. What happens at oral arguments? Mr. Dahm indicates that his writings may have been ill-advised, but he argues the interpretation of the document. Now, so let me ask you what interplay, if any, you see between these two cases that we're hearing simultaneously. If we were to agree with you and with Judge Holland about the agreement with this set of people, entities, I don't know which is the proper term. What effect does that have, if any, on the likelihood of the Court's interpretation with respect to the Seahawk plaintiffs? That's a good question, Your Honor. I'm not sure I follow all of the new information. Well, I guess if Exxon agreed with one whole set of folks to pay interest compounded annually, isn't that or couldn't that be part of the context for understanding the letter to Seahawk as well, even though it's a different entity and it's a different case number? But just in my own mind, I have trouble separating out why Exxon would have taken a different position with respect to the two. Well, I can't speak for Exxon. I can speak for the concessions that we made during the negotiating process and the positions that we were taking that we were entitled to compounded interest, either under state or federal law. It was not an issue which was centrally in dispute. Exxon agreed early on that there would be a compounding of interest. That was a material term to us. That was material to the concessions we made and the principal amount. What is shocking here is that they're now trying to strike those words or condition the application of those words, and that's no different than my adding an extra zero to our principal amount. But I think they are, in the general context, they are related. We were aware of the Seahawk issue. We wanted to make sure we had no ambiguities, so we made sure that those words were in the document and those words were not qualified by any sense in any manner whatsoever. I see that my time is up for Mr. Widener. Is that it for the questions? No questions? You're sharing the same ten minutes. Go ahead. You've got about two and a half minutes left. May it please the Court, Philip Widener for CIP. A deal's a deal, settlement's a settlement, compound interest equals compound interest. In our supplemental excerpt of record at SER 204, there was a red-line version that was sent to Mr. Gong, a red-line version with compounded annual. What Exxon did was they argued before Judge Ong on the interpretation because they had lost their bet. We were a stand-alone plaintiff's going to trial. We settled with them, agreed a principal with compounded annual interest. They thought it was a throwaway. They thought they were going to win on the federal rate and it wouldn't make any difference. When this Court ruled in Seahawk, it made a difference. Then they tried to switch streams. They argued before Judge Ong on the interpretation and they lost. They didn't file this motion to reconsider after they had lost before Judge Ong. Your Honor is correct. That judgment is absolutely clear. It's an integrated part of the judgment. Exxon is one of the most sophisticated litigants Your Honors will ever see in this courtroom. Mr. Gong is one of the most sophisticated attorneys. He's been in this case for 19 years. Mr. Smith is House Counsel for Exxon and Mr. Galeck is House Counsel for the other defendants. This document was reviewed by many, probably tens of lawyers. Exxon insisted. They wrote the language. They got an injunction in the judgment. They restricted us on the sums of subject to royalty through attorneys' fees. They restricted us on the percentage rate. They thought it was a throwaway related to attorneys' fees. Once they lost, then they tried to manufacture an argument on reformation. The reason they did that is because they still haven't paid the money they owe. Even under their version, they owe us $3.5 million. They still haven't paid it because this settlement doesn't get funded until the final mandate from this Court and after the time runs for the U.S. Supreme Court. What they've done is they've held back $3.5 million and actually now $12 million because they're trying to delay. Counsel, is it your position that Judge Holland indeed did take into account, did consider the letters exchanged between the two sides during the negotiations and that polar equipment statements in the subsequent briefs were in fact considered? Yes. He obviously referred to them and he considered all the evidence that Exxon brought forward. Those references in CIP's briefs were merely a statement of what the state law was in the absence of an agreement. He considered that. He wrote specifically there was no judicial estoppel. He considered the conceptual letter to agree. The process after the conceptual letter to agree until this final integrated agreement, which has an integration clause and says it supersedes any prior discussions, it was a very sophisticated process. Exxon got a lot of concessions in that. And in addition, we got the rescinding of the releases and the reassignments. There's no ambiguity here, not a bit. And there's no mistake. And it's frankly ludicrous to come into a court when you had a red-line version sent to you and say you made a mistake. Thank you, Counsel. Your time has expired. We are now at the rebuttal stage. Who will go first? All right. When was that motion filed? It's just a motion to supplement the record on appeal. Probably December 1. All right. We will obviously consider it in due course. Thank you, Counsel. We don't agree with all the statements in the motion, but we don't have any objection to the courts taking a look at those two orders. Are you indicating that you're going to file some additional papers in response to the motion, or? Well, the motion is just to supplement the record, but like many motions, it contains recitals of fact and so forth that we don't agree with, but we don't have a problem with supplementing the record by including those two orders. And you don't anticipate making any further filings with respect to that particular matter, the motion to supplement the record? No, Your Honor. Very fine. Thank you. Your Honor, let me talk first about the theme that ran through both Mr. Gagnon's argument and Mr. Widener's, which is this was an important part of the deal they understood to have been made, that is, that Exxon had promised to take compound interest no matter what law applied, but for that agreement they would never have made the deal. It's just not true. The letter agreement that we had with Mr. Widener, which was the basis on which the case settled, contained no agreement whatever to pay compound interest. It contained language which was essentially repeated in the long-form settlement agreement. Is this one of the documents that you suggest was not considered in the ---- It was clearly not considered, Your Honor. It was sent to Judge Holland on motion to reconsider, and he said that it was irrelevant. But it contained nothing at all about an agreement to pay compound interest. And Mr. Widener signed that. That was the effective settlement. We had an agreement to document it in a longer-form agreement. It is perfectly true that I made a mistake and attached the judgment to that long-form agreement, and that created the problem. I'm pleased to hear Mr. Widener's compliments of Exxon and its lawyers, but this was a mistake, and I'm sorry for it. As ---- If you are conceding that attaching the judgment to the integrated contract settlement agreement was a mistake, then you really don't have an argument for the admission of extrinsic evidence except on your reformation argument. You don't really have an argument about interpreting the contract. No, I don't think I would concede that, Your Honor. It was obviously a mistake because we wouldn't have this problem if I hadn't done that. But you can see that the judgment is absolutely clear. Well, I don't, Your Honor, I don't think that in a context, I don't think in a context where you were attaching a form of order which you have no ability to compel the judge to sign, that there is no ambiguity between the actual language of the agreement and that judgment. So I don't think there's no ambiguity here. I don't concede that point. I understand Your Honor's approach to it, but you asked me if I conceded it, and I don't. I don't understand how you can argue that it's a mistake when paragraph 6.4 says that there's this settlement agreement, including the attached exhibit, and it goes on from there. So presumably there was some exhibit intended. It wasn't a mistake to attach an exhibit. It was a mistake to attach this exhibit with the confounded ambiguity language. What is your response, Mr. Dahm, to Mr. Widener's assertion at the end of his comments that Judge Holland indeed considered all of these documents that you suggest were not considered? Well, they fall in two categories. The first are the statements by Mr. Widener in his briefs prior to June 15. Those, from our point of view, are practical conduct of the parties that show that they interpreted the agreement the same way we did. Those were presented to Judge Holland before his first ruling. They were offered for, as I said, they were offered practical conduct of the parties. Judge Holland considered them on the issue of judicial estoppel. He found they didn't amount to a judicial estoppel, but he did not consider them at all as evidence to be used to interpret the contract. The remainder of the documents in question, the negotiating history of the parties and that sort of thing, were offered on motion to reconsider. Judge Holland said expressly that he found them irrelevant. So, you know, and he has said in the two rulings in the other case, in the reformation case, that the basis for his ruling then was similar to Judge Bybee's, that the contract was unambiguous on its face and he wasn't going to admit any evidence to contradict that. Mr. Gagnon also said that Nautilus Marine relied on the proposition that there was, well, I've said that Mr. Widener. Very briefly, Mr. Downe. Your time has expired, but you may finish your point. Mr. Widener said that he only settled because of this promise. The letter agreement shows that he didn't. He settled without it. Mr. Gagnon says Nautilus Marine only settled because of this supposed promise. And let me read the – let me direct Your Honor to the language at ER 362, which is Mr. Gagnon's argument before Judge Holland in July of 2007. And there he makes very plain that when they were talking about compound interest, they were talking about compound interest on the basis of applying the federal statute, perhaps choosing the rate from the state statute, but applying the state rate under the federal statute. That produces compounding. But Mr. Gagnon's argument before Judge Holland at ER 362 shows that they were not making the argument that they had an independent promise from Exxon to pay the compound interest. And that's what this case is about. Thank you, counsel. Thank you, Your Honor. Mr. Schein, I'm going to give you an additional minute or so to compensate for the overtime on Mr. Downe. Thank you very much, Your Honors. I want to go back to the Putnam agreement for a minute. When the parties entered into their first signed settlement agreement back in 2004, the Putnam letter, both sides assumed compound, but it wasn't in dispute. So what that agreement does is it doesn't mention compound, but it provides for payment on a compound interest basis. And it certainly is an agreement to pay prejudgment interest. Then the file was transferred from the negotiator to the litigator, and that was me. I filed a motion to determine the rate of prejudgment interest. I looked at the Putnam letter, and it didn't say expressly anything about compound. So I asked in the motion for the court to award compound for any rate that was awarded. Now, this was in our motion, which this court, as a matter of the law of the case, has already found in Seahawk I, raised both state and federal as a basis for awarding compound interest and prejudgment interest. So we said we wanted on any rate, any rate selected should be compounded. What does Exxon do? If it really believed at the time that state law did not allow compounding, and that was its position, it had to come back and say, we agreed under federal law but not under state law. It did not do that. Instead, it clearly and unambiguously took the entire issue of compound interest off the table, saying, quote, Exxon voluntarily agreed to compound interest. That's footnote 16 at ER 67. At the time, Exxon knew well that state law was an issue. It mentioned it repeatedly in that same brief, and yet it didn't take it off the table. Now, there's a complex explanation for this, and that's Exxon's brief and its argument. There's also a simple explanation for this conduct that came before the Diamond Letter but sets the context, the real context, of the Diamond Letter. And that is, in fact, quote, the parties agreed that prejudgment interest will be compounded. And that's a quote from Mr. Diamond, period. And that's why they didn't make that distinction. All Seahawk asks is that this court enforce Exxon's own words against it. The standard of review is de novo. We raised this in our opening brief. We replied further when other arguments were raised to our surprise. All this was was a motion to determine the meaning of undisputed documents, interpretation of a contract, analogous to summary judgment. Exxon asked Judge Holland to take additional evidence and hold an evidentiary hearing, and he declined to do so. So it's clearly a de novo standard. And looking at both footnotes 16 and the Diamond Letter, it's absolutely clear the only objective manifestations of intent are that Exxon will pay compound interest with no qualification. Unless there are further questions, I have nothing further. No further questions. Thank you, counsel. The court would like to express its appreciation to counsel on both sides for a rather complex appellate matter that we have before us involving several cases. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee